Ida Klein, Appellant, v. City of Pittsburgh.

Argued April 23, 1929.

Before TREXLER, KELLER, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*Thomas M. Marshall,* and with him *Charles G. Notari* and *Marshall & Marshall,* for appellant.—Iseminger v. York Haven W. & P. Co., 206 Pa. 591; McHugh v. Kerr, 208 Pa. 225; McDonald v. Pittsburgh, 278 Pa. 485.

*Charles A. Waldschmidt,* City Solicitor, and with him *Benjamin L. Steinberg,* Assistant City Solicitor, for appellee.—Robb v. Connellsville Borough, 137 Pa. 42; Lerner v. Philadelphia, 221 Pa. 294; Bean, Appellant, v. City of Philadelphia, 260 Pa. 278.

OPINION BY CUNNINGHAM, J., July 2, 1929:

Ida Klein contends by this appeal that the court below erred in entering judgment in favor of the City of Pittsburgh, notwithstanding her verdict against it for $2,000 as damages for personal injuries suffered by her when she fell into a hole, which had existed for some months, along a pathway constructed and maintained by the city in one of its public parks. The learned trial judge refused defendant's point for binding instructions and submitted to the jury the questions of defendant's negligence and plaintiff's alleged contributory negligence; after argument before the court in banc, defendant's motion for judgment n. o. v. was granted upon the sole ground of plaintiff's contributory negligence—the trial judge concurring and writing the opinion supporting the judgment.

For the purposes of this review we treat the negligence of the defendant as conclusively established by the verdict and, therefore, inquire only whether, accepting as true all the evidence and inferences therefrom favorable to plaintiff and rejecting all unfavorable to her, binding instructions should have been given in favor of the city upon the ground that plaintiff was, as a matter of law, guilty of contributory negligence.

Reading the testimony in this light, the material facts may be thus epitomized: On June 16, 1925, plaintiff, an elderly woman, in company with fifteen or twenty friends, was attending an outing given by a musical circle in Riverview Park. In the early evening, but in full daylight, the party of women went

from one of the park cabins along a pathway, graded and maintained by the city, to a ball field to witness certain foot races, in which some of them were to participate. The ball field is in a natural arena, bounded on one side at least by a path or road approximately twelve feet in width, which, as we understand the evidence, is a continuation of the path from the cabin. As the level of the ball field is lower than that of the path there is an embankment, or terrace, extending from the outer edge of the path to the level of the field. In this embankment was a "rugged washout," or hole, three feet wide, four and one-half feet long and three and one-half feet deep; it was unguarded and extended to the edge of the path. The women stopped on the path directly in front of this hole to watch a race about to start. Plaintiff's account of the accident reads: "A. Well, we were standing there, and—the last I know, there was a crowd of the ladies and they were all ready to step out—they had their feet out, ready to go, out in the race, see, and I guess me standing there, you know, maybe the crowd pushed a little, you know, and that is the last I remember. I don't know how I went over. . . . . . . I don't remember how it happened. That is the truth. I don't remember how it happened, how I went over. . . . . . . Q. Do you know what caused you to get hurt, or what caused you to go over, do you know? A. No; I don't. Q. Had you moved just before you fell, before you were hurt? A. Not as far as I know. As I told you, I don't know how I went over, I could not tell you how it happened at all. Q. Did you know whether there was any hole there? A. No, sir; I did not. Q. Do you know whether or not there were people passing up and down at the time you fell or just before? A. I did not notice any. We were all standing there, watching the game, and I did not notice whether anyone passed or not at the time."

One of her witnesses was standing along the path on the opposite side of the washout from plaintiff. This witness, after referring to a discussion about the race and a suggestion that she participate, said: "In conversing, it was necessary for me to cross this ditch to go to the place where Mrs. Klein was standing, which I did, and then in standing next to Mrs. Klein, without any warning, Mrs. Klein went into the ditch." On cross-examination her testimony reads: "Q. What caused her [plaintiff] to fall? A. Well, they were all walking around, adjusting their positions. Q. And she was adjusting her position, is that right? A. Yes."

There was no testimony which would justify an inference that plaintiff was "bumped" or "pushed" (a possibility suggested by her and some of her witnesses) or that her view of the hole was obscured by anyone standing or passing between her and it. The nearest approach in the testimony to anything of this kind was the statement of one witness, who, when asked whether the group was standing still or moving around, answered that it was "shuffling" and that plaintiff fell into the hole backward—a statement entirely consistent with the testimony to the effect that plaintiff and others were "adjusting" their positions. The case is properly described by the writer of the opinion for the court below, MARSHALL, J., as that of "a woman in a city park, in broad daylight, standing by an open hole which was perfectly visible, and without observing the hole or even looking about her 'to notice anything,' changing her position, whereby she stepped or fell into the hole."

The facts attending this accident and the inferences to be drawn from them are not left in doubt or uncertainty under the evidence; the question of plaintiff's contributory negligence is, therefore, one of law. Even if we apply, in favor of this plaintiff, the rule of law applicable to accidents in which a pedestrian is

injured by reason of a defect in a city street, we are of opinion that she is not entitled to recover. That rule, in terms of this case, is that when the accident occurs in broad daylight in consequence of an open and exposed defect in the sidewalk a presumption of contributory negligence arises, and the burden is upon the party complaining to show conditions outside of herself that prevented her from seeing the defect, or which would excuse her failure to observe it.

We quote the following excerpt from the opinion of the court below as a fair summary of the facts and a proper application to them of established principles of law: "She elected to walk along the path to a point adjoining the open hole, and there station herself to watch the races. It was broad daylight and the hole must have been apparent, had she looked about her. Others in her party saw it. There is not a word of testimony that any person or thing was between her and the hole, to obstruct her view. While she was in company with a number of people, there is no proof that their presence prevented her from seeing the opening. She admits she did not look about her. Having chosen to stand on the brink of an open pit which she would have seen had she looked, the only inference to be drawn from the facts is that she was paying no attention to where she walked or stood, and if, in shifting her position, she suddenly stepped or backed into the depression, her consequent fall and injury are attributable to her own lack of care, even though the city was also negligent: Easton v. Philadelphia, 26 Pa. Superior Ct. 517; Robb v. Connellsville Borough, 137 Pa. 42; Bean v. Philadelphia, 260 Pa. 278; Montgomery v. Philadelphia, 270 Pa. 346. Plaintiff's counsel relies upon the cases of Becker v. Philadelphia, 212 Pa. 379, and Iseminger v. York Haven W. & P. Co., 206 Pa. 591, but they are distinguishable. In Becker v. Philadelphia, supra, the

crowd of men which passed between plaintiff and the hole in the sidewalk interfered with her view, so that it was for the jury to say whether, after the crowd had passed, she had had sufficient time to see and avoid the dangerous opening. In Iseminger v. York Haven W. & P. Co., supra, the question of contributory negligence was left to the jury because plaintiff had not been walking on the sidewalk in which the opening was, and so had no occasion to look for defects or obstructions. At the moment when she determined to make use of the sidewalk, she took one step backward in order to turn, and was precipitated into the opening. The court in its opinion conceded the case was a close one, due to the exceptional facts. We prefer to follow the line of decisions in which the accident occurs in daylight and plaintiff shows no conditions exterior to herself which prevent her from seeing the danger, or excuse her failure to notice it. Lerner v. Philadelphia, 221 Pa. 294, is typical of this class of cases. In that case, as in this, it was contended that the crowded condition of the sidewalk had prevented plaintiff from seeing the depression; but since neither she nor her witnesses had testified that the crowd interfered with her view, she was held responsible for her failure to be observant, and a nonsuit was entered."

Further discussion would serve no useful purpose. The judgment is affirmed.